UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ISMAEL MEDERO, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:16-cv-00047 (VLB) |
| | : | |
| MURPHY SECURITY SERVICE, LLC | : | June 6, 2016 |
| Defendant. | : | |

MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART
DEFENDANT MURPHY SECURITY SERVICE, LLC'S MOTION TO DISMISS
COUNTS TWO AND THREE OF THE COMPLAINT [Dkt. #16]

Before the Court is the motion of the Defendant, Murphy Security Service, LLC (hereinafter "Murphy" or "Defendant") to dismiss state common law wrongful termination and breach of the covenant of good faith and fair dealing claims brought by the Plaintiff, Ismael Medero (hereinafter the "Plaintiff"). For the reasons that follow, Murphy's Motion to Dismiss is GRANTED in part and DENIED in part.

I.   Background

From 2005 through 2013, Plaintiff was employed as a Site Supervisor by SOS Security ("SOS"). [Dkt. #1-1, Compl. at ¶¶ 3, 6]. SOS had a contract to provide security services to the State of Connecticut, and Plaintiff was responsible for overseeing all of SOS's security guards under the contract. [*Id.* at ¶¶ 4-5]. In 2013, Defendant Murphy assumed the contract and retained the Plaintiff and all of the other SOS security guards to continue their service in support of the contract. [*Id.* at ¶¶ 6-7]. The contract required all security personnel to log forty hours of basic training in security topics prior to being assigned to work at any location covered by the contract. [*Id.* at ¶ 8]. On August

1

31, 2013, the Defendant put on a four-hour training presentation which the Plaintiff and the other security guards attended.  [*Id.* at ¶ 9].  At no other time was any additional training provided to the Plaintiff or any of the other security personnel.  [*Id.* at ¶ 10].

On August 7, 2015, Joseph McCarty ("McCarty"), Murphy's Director of Operations, emailed Plaintiff a form and requested that he and the other security staff complete it.  [*Id.* at ¶ 11].  The form stated that the security guards had received forty hours of training in 2013.  [*Id.*].  McCarty further requested that each employee place on the form the date of August 31, 2013, or, if the employee was hired at a later date, the employee's date of hire.  [*Id.* at ¶ 12].  Plaintiff and all of the other security officers refused to sign the form.  [*Id.* at ¶ 18].

On August 10, 2015, McCarty and Chris King ("King"), Murphy's Scheduler, contacted Plaintiff and asked him to disclose the names of the individuals who had refused to sign the form.  [*Id.* at ¶ 19].  Plaintiff informed him that all of the officers, including himself, had refused to sign it.  [*Id.* at ¶ 20].  He also stated that he was "not comfortable signing this [form]" because he had not received forty hours of training.  [*Id.* at ¶ 21].  Upon hearing this, McCarty became upset and asked the Plaintiff if he had instructed the officers not to complete it.  [*Id.* at ¶ 22].  When the Plaintiff denied that he had, McCarty ordered the Plaintiff to go home, and he claimed that the Plaintiff was acting insubordinate.  [*Id.* at ¶ 24].  The Plaintiff then asked McCarty why McCarty accused him of insubordination, and McCarty replied that it was because he "did not tell the security guards to sign" the certification form.  [*Id.* at ¶ 25].  In response, the Plaintiff stated, "I will not

force the officers to lie," to which McCarty stated, "Your resignation has been accepted," and he again ordered the Plaintiff to leave.  [*Id*. at ¶¶ 26-27].  Plaintiff was terminated thereafter.  [*Id*. at ¶ 28].

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

**3**

III.    <u>Analysis</u>

A.    <u>Count II States a Common Law Wrongful Discharge Claim Based on a
      Theory that Plaintiff was Terminated for Not Completing the Certification
      Form and/or Ordering the Guards He Supervised to Complete Their Forms</u>

Murphy moves to dismiss Count II of the Complaint, which brings a claim
of common law wrongful termination in violation of public policy.  *See* [Dkt. #1-1
at 4].  The Complaint identifies the public policy the Defendant allegedly violated
as one "against fraud and/or fraud in public contracts."  [*Id.*].  To support this
claim, Plaintiff relies on the first 28 paragraphs of his Complaint, the same
allegations he raises in bringing a count of wrongful termination in violation of
Conn. Gen. Stat. § 31-51q.  [*Id.*].  The Defendant contends that Plaintiff is barred
from bringing a common law wrongful termination claim because Conn. Gen.
Stat. § 31-51q provides Plaintiff with an adequate statutory remedy.  The Court
agrees with the Defendant that "an adequate statutory remedy preclude[s] [a]
plaintiff's common law wrongful discharge claim."  [Dkt. #16-1, Def.'s Mem. at 3
(citing *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 162 (Conn. 2000)].  However,
that principle does not end the inquiry.

"[I]f there is a distinct and alternative theory of liability, related to a public
policy that is *not* protected by state or federal statute, a wrongful discharge
action may proceed."  *Lopez v. Burris Logistics, Co.*, 952 F. Supp. 2d 396, 405-06
(D. Conn. 2013) (emphasis in original) (citing *Van Kruiningen v. Plan B, LLC*, 485
F. Supp. 2d 92, 96 (D. Conn. 2007)).  Thus, the mere fact that a plaintiff relies on
the same set of facts on which to bring a statutory and common law wrongful

4

discharge claim does not alone bar the common law claim.  Instead, the question is whether the allegations, taken in a light most favorable to the plaintiff, may be reasonably construed to assert a distinct and alternative theory of liability rooted in a public policy that is not protected by statute.  Here, the Court finds that they can.

Under § 31-51q, a plaintiff may bring a claim for a wrongful discharge in retaliation for the exercise of protected speech.[1]  In essence, "[i]n order to demonstrate a violation of section 31-51q, a plaintiff must prove that: (1) he was exercising rights protected by the first amendment to the United States Constitution (or an equivalent provision of the Connecticut Constitution); (2) he was fired on account of his exercise of such rights; and (3) his exercise of his first amendment (or equivalent state constitutional rights) did not substantially or materially interfere with his bona fide job performance or with his working relationship with his employer."  *Kennedy v. Coca-Cola Bottling Co. of New York, Inc.*, 170 F. Supp. 2d 294, 299 (D. Conn. 2001) (citing *Lowe v. AmeriGas, Inc.*, 52 F.

---

[1] Conn. Gen. Stat. § 31-51q provides:

> Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.

5

Supp. 2d 349, 359 (D. Conn. 1999), *aff'd*, 208 F.3d 203 (2d Cir. 2000)).  "To be protected by the first amendment, the plaintiff's speech must have been on a matter of public concern, and the plaintiff's interest in expressing himself on the particular matter must not have been outweighed by any injury the speech could cause to the employment relationship."  *Id.* (citing *Cotto v. United Techs. Corp.*, 48 Conn. app. 518, 630, 711 A.2d 1180 (Conn. Ct. App. 1998)).

Plaintiff's allegations permit two distinct theories of liability.  First, that the Plaintiff was terminated on account of his protected statements to McCarty, that he was "not comfortable signing" the allegedly inaccurate form and that he would "not force the officers to lie."  [Dkt. #1-1 Compl. at ¶¶ 21, 26].  The Complaint indicates that Plaintiff's speech pertained to the commission of a fraud on the State of Connecticut.  *See* [*id.* at ¶ 13 ("In essence, the Defendant was asking its employees fraudulently certify that they had been given the training required by the state contract, when in fact, they had received no such training.")].  Under Connecticut law, "criminal activity in the workplace" is a matter of public concern sufficient to sustain a free speech claim under § 31-51q.  *Kennedy*, 170 F. Supp. 2d at 299; *see also Lowe*, 52 F. Supp. at 359 (holding that plaintiff's complaints regarding unsafe company practices that violated governmental regulations constituted protected speech).  That conclusion is particularly compelling in this case, where the object of the alleged improper activity was to circumvent public health, safety and welfare requirements.  *See Lopez,* 952 F. Supp. 2d at 407 ("[I]ssues of workplace safety have been accepted as matters of public concern.").  Thus, the Complaint states a claim pursuant to Conn. Gen. Stat. § 31-

51q, under which the Plaintiff brings Count I of the Complaint.

Second, the Complaint asserts a separate wrongful discharge claim based on the Plaintiff's alleged insubordinate refusal to commit fraud by completing the form as directed and instructing his subordinates to complete their forms. [Dkt. #1-1 Compl. at ¶¶ 18, 28]. Plaintiff's citation to *Faulkner v. United Techs. Corp., Sikorsky Aircraft Div.*, 240 Conn. 576 (Conn. 1997) in Count II of the Complaint indicates his reliance on this second theory, which is distinct from the speech-based claim in Count I. [*Id*. at 4, ¶ 29]. In *Faulkner*, the Connecticut Supreme Court held that the plaintiff adequately pled a common law wrongful termination claim where he alleged that he was discharged after refusing to approve the use of defective parts in helicopters constructed pursuant to a contract with the federal government. *Faulkner*, 240 Conn. at 582-84.

The Defendant does not identify any statute that protects an employee from termination for failing to take action in furtherance of a fraud. Moreover, none of the cases the Defendant cites in support of its assertion that the wrongful discharge claim is barred addresses such a situation. *See* [Dkt. #16-1, Def.'s Mem. at 3-4]. In each case, the conduct underlying the wrongful discharge claim either did not implicate a recognized Connecticut public policy at all or it plainly concerned the plaintiff's free speech interest, which was protected by § 31-51q. *See Sherman v. Sedgwick James of Connecticut, Inc.*, No. CV-326150, 1997 WL 83714, at *2 (Conn. Super Ct. Feb. 10, 1997) (striking common law wrongful discharge claim in light of § 31-51q where claim was based on allegation that plaintiff was terminated after voicing a grievance concerning a police officer's

behavior and where plaintiff contended the public policy supporting her common law claim was the right of Connecticut residents to petition the government); *Brown v. The New London Day*, No. 551571, 2001 WL 984818, at *3 (Conn. Super. Ct. Jul. 30, 2001) (dismissing common law wrongful discharge claim where plaintiff failed to cite "any authority which supports his contention that there is a public policy in favor of encouraging private citizens to assist the police in their criminal investigations" and holding that, in any event, the free speech protections in § 31-51q sufficiently covered a claim "of unlawful discharge for communicating with the police over a matter of public concern"); *King v. Connection, Inc.*, No. CV106015682S, 2011 WL 3211250 (Conn. Super. Ct. Jun. 20, 2011) (determining that wrongful discharge and § 31-51q claims were based "on the same essential set of facts" since the "gravamen" of plaintiff's wrongful discharge claims was that she was fired for "her 'consistent and emphatic opposition' *and 'complaining'* regarding the alleged illegal activities," and where her wrongful discharge claim relied, in part, on "the state whistleblower statute against retaliatory discharges for speaking against illegal and unethical practices . . . .") (emphasis added).  Since the allegations in the Complaint may plausibly be read to plead that Plaintiff was terminated because of his failure to either complete the certification form and/or to order his colleagues to complete their forms—conduct independent from the statements he made to McCarty against such requests—the Defendant's motion to dismiss Count II of the Complaint is DENIED.

**B.**     <u>Count III Fails to State a Claim</u>

Count III brings a claim for breach of the covenant of good faith and fair dealing.  *See* [Dkt. #1-1, Compl. at 5].  The Complaint alleges that Plaintiff's termination was in violation of the public policies against fraud generally and in public contracts, citing to *Schmidt v. Yardney Elec. Corp.*, 4 Conn. App. 69, 492 A.2d 512 (Conn. Ct. App. 1985) and *Faulkner v. United Techs. Corp., Sikorsky Aircraft Div.*, 240 Conn. 576 (Conn. 1997).  The Defendant contends that Count III fails to state a claim because the Complaint does not allege the existence of any contract between the parties.  *See* [Dkt. #16-1, Def.'s Mem. at 4].  The Court agrees.

On numerous occasions, the Connecticut Supreme Court has held that a contract is a necessary element of a good faith and fair dealing claim.  *See Hoskins v. Titan Value Equities, Grp., Inc.*, 252 Conn. 789, 793 (Conn. 2000) ("[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing."); *Forte v. Citigroup Mortg., Inc.*, 66 Conn. App. 475, 484 (Conn. Ct. App. 2001) ("The existence of a contract between the parties is . . . a necessary predicate to a successful claim of breach of an implied covenant of good faith and fair dealing, and the failure to allege the existence of a contract is fatal to such a claim.").  Neither of the cases Plaintiff cites in his Complaint hold otherwise.  The plaintiff in *Schmidt* did not bring a claim for breach of the covenant of good faith and fair dealing.  While the plaintiff in *Faulkner* did, the trial court construed the claim as alleging a common law wrongful discharge claim under the at-will employment doctrine, but it

**9**

nevertheless dismissed the count because the plaintiff failed to allege that the conduct, which violated federal law, also violated Connecticut's public policy. *See Faulkner*, 240 Conn. at 579-80.  In reversing the trial court, the Supreme Court did not revive, or even discuss, plaintiff's breach of the covenant of good faith and fair dealing theory (beyond describing the plaintiff's pleading).  It exclusively examined the allegations under a common law wrongful discharge framework, found that the allegations established a violation of public policy, and rejected the trial court's conclusion that a wrongful discharge claim must allege a violation of state, as opposed to federal, public policy.  *Id.* at 582-86.

Plaintiff does not address these points or the existence of any contractual relationship between the parties in his opposition.  Absent a contractual relationship, Count III of the Complaint fails to state a claim and is therefore DISMISSED.

IV.   <u>Conclusion</u>

For the foregoing reasons, Defendant Murphy's Motion to Dismiss is GRANTED in part and DENIED in part.  Count III having hereby been dismissed, the case will proceed as to Plaintiff's statutory and common law wrongful discharge claims, Counts I and II, respectively.

IT IS SO ORDERED, ADJUDGED AND DECREED, this 6th day of June 2016, Hartford, Connecticut

_____ */s/* _____
Vanessa L. Bryant,
United States District Judge

**10**